GIBSON, DUNN & CRUTCHER LLP
KATHERINE V.A. SMITH, SBN 247866
  ksmith@gibsondunn.com
ANGELA REID, SBN 323057
  areid@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

GIBSON, DUNN & CRUTCHER LLP
MEGAN COONEY, SBN 295174
  mcooney@gibsondunn.com
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  949.451.3800
Facsimile:   949.451.4220

Attorneys for FORD MOTOR COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA CHILDRESS, individually and on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>FORD MOTOR COMPANY; and DOES 1-100, inclusive,<br><br>                    Defendants. | CASE NO.  5:23-cv-01949<br><br>**NOTICE OF REMOVAL OF CLASS ACTION**<br><br>(San Bernardino Superior Court Case No. CIV SB2316694)<br><br>Action Filed:        July 20, 2023<br>Trial Date:          None Set |

# TABLE OF CONTENTS

**Page**

I.     TIMELINESS OF REMOVAL ........................................................................ 1

II.    SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL .......... 2

    A.     The Proposed Class Consists of More Than 100 Members ...................... 3

    B.     Ford and Plaintiff Are Not Citizens of the Same State ............................ 4

    C.     The Amount in Controversy Exceeds $5 Million ..................................... 5

        1.     Plaintiff's Claim for Alleged Violations of California Labor Code Section 226 Places More Than $788,000 in Controversy .......................................................................................... 7

        2.     Plaintiff's Claim for Waiting Time Penalties Places Another $772,800 in Controversy ..................................................... 9

        3.     Plaintiff's Claim for Meal and Rest Period Violations Places Another $2,415,000 in Controversy .............................. 11

        4.     Plaintiff's Claim for Minimum Wage Violations Places Another $805,000 in Controversy ................................... 14

        5.     Plaintiff's Claim for Reimbursement for Necessary Expenditures Places $140,000 in Controversy ............................ 16

        6.     Plaintiff's Request for Attorneys' Fees Places Another $1,002,000 in Controversy .............................................. 18

        7.     Ford Has Satisfied Its Burden Under CAFA and No Exception Is Applicable ........................................................ 20

III.   THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER ........... 21

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arias v. Residence Inn by Marriott*,
936 F.3d 920 (9th Cir. 2019) ............................................................. 5, 6, 8

*Attia, et al. v. The Neiman Marcus Grp., LLC*,
2019 WL 13089601 (C.D. Cal. Feb. 25, 2019) ......................................... 9

*Ayala v. Cox Auto., Inc.*,
2016 WL 6561284 (C.D. Cal. Nov. 4, 2016) ............................................ 4

*Barcia v. Contain-A-Way, Inc.*,
2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ............................................... 9

*Campbell v. Vitran Exp., Inc.*,
471 F. App'x 646 (9th Cir. 2012) ............................................................ 6

*Guglielmino v. McKee Foods Corp.*,
506 F.3d 696 (9th Cir. 2007) ................................................................... 9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................. 9

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) .................................................................................. 5

*Johnson v. Columbia Props. Anchorage, LP*,
437 F.3d 894 (9th Cir. 2006) ............................................................... 4, 5

*Kantor v. Wellesley Galleries, Ltd.*,
704 F.2d 1088 (9th Cir. 1983) ................................................................. 4

*Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*,
199 F. Supp. 2d 993 (C.D. Cal. 2002) ..................................................... 6

*Korn v. Polo Ralph Lauren Corp.*,
536 F. Supp. 2d 1199 (E.D. Cal. 2008) .................................................... 6

*LaCross v. Knight Transp. Inc.*,
775 F.3d 1200 (9th Cir. 2015) ................................................................. 5

*Lewis v. Verizon Commc'ns, Inc.*,
627 F.3d 395 (9th Cir. 2010) ................................................................... 5

Gibson, Dunn &
Crutcher LLP

ii

*Lucas v. Michael Kors (USA), Inc.*,
   2018 WL 2146403 (C.D. Cal. May 9, 2018) ........................................................... 9

*Manuel Vigueras v. Red Robin Int'l, Inc et al*,
   2020 WL 13042573 (C.D. Cal. Dec. 2, 2020) ....................................................... 9

*Mejia v. DHL Express (USA), Inc.*,
   2015 WL 2452755 (C.D. Cal. May 21, 2015) ....................................................... 7

*Rippee v. Boston Mkt. Corp.*,
   408 F. Supp. 2d 982 (S.D. Cal. 2005) .................................................................. 6

*Salter v. Quality Carriers, Inc.*,
   974 F.3d 959 (9th Cir. 2020) .......................................................................... 5, 6

*Soto v. Tech Packaging, Inc.*,
   2019 WL 6492245 (C.D. Cal. Dec. 3, 2019) ........................................................ 8

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
   19 F.3d 514 (10th Cir. 1994) ............................................................................ 4

*Std. Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013) .......................................................................................... 5

**STATUTES**

28 U.S.C. § 84 ............................................................................................... 11

28 U.S.C. § 1332 .......................................................................... 2, 4, 5, 10, 11

28 U.S.C. § 1441 ................................................................................... 1, 2, 11

28 U.S.C. § 1446 ......................................................................................... 1, 11

28 U.S.C. § 1453 ......................................................................................... 1, 11

Cal. Civ. Proc. Code § 340 ............................................................................. 8

Cal. Civ. Proc. Code § 382 ............................................................................. 2

Cal. Lab. Code § 226 ........................................................................... 6, 7, 8, 9

Gibson, Dunn &
Crutcher LLP

iii

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF LISA CHILDRESS AND HER COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT**, pursuant to pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendant Ford Motor Company ("Ford") hereby removes to the United States District Court for the Central District of California the above-captioned state court action, originally filed as Case No. CIV SB2316694 in San Bernardino County Superior Court, State of California. Removal is proper on the following grounds:

## I.    TIMELINESS OF REMOVAL

1.    Plaintiff Lisa Childress ("Plaintiff") filed a putative Class Action Complaint against Ford in San Bernardino County Superior Court, State of California, Case No. CIV SB2316694 , on July 20, 2023.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Notice of Hearing, (b) Summons, (c) Class Action Complaint, (d) Certificate of Assignment, (e) Civil Case Cover Sheet, (f) Notice and Acknowledgement of Receipt, and (g) Answer to Complaint are attached as Exhibits A-G to the Declaration of Katherine V.A. Smith ("Smith Decl.") filed concurrently herewith.

2.    According to the Notice and Acknowledgement of Receipt, Ford accepted service of the Complaint on August 23, 2023.[1]  *See* Smith Decl., Ex. F, Notice and Acknowledgment of Receipt.  Consequently, service was completed on August 23, 2023.  This notice of removal is timely because it is filed within 30 days after service was completed.  28 U.S.C. § 1446(b).

---

[1] Based on the docket information available online, it appears that Plaintiff has filed a copy of the Notice of Acknowledgment and Receipt with the Court.  However, a filed copy of this document is currently unavailable online.  Therefore, Ford submits herewith a copy of the Notice of Acknowledgment and Receipt that was served on Plaintiff's counsel on August 23, 2023.

## II.   SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

3.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject matter jurisdiction over this action and all claims asserted against Ford under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

4.     CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure § 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); *see also* Smith Decl., Ex. C, Class Action Complaint ("Complaint") ¶ 1.

5.     Plaintiff purports to represent various proposed classes, including "all of [Ford's] current and former non-exempt employees in California." Complaint ¶ 18. She asks the Court to impose damages and penalties on behalf of "herself and for all others on whose behalf this suit is brought . . . ." Complaint, Prayer for Relief.

6.     In her Complaint, Plaintiff alleges seven causes of action against Ford: (1) Failure to Pay Minimum Wages; (2) Failure to Provide Meal Periods; (3) Failure to Provide Rest Periods; (4) Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions; (5) Failure to Timely Pay Wages Owed at Separation; (6) Failure to Reimburse Necessary Expenses; and (7) Violation of the Unfair Competition Law.

7.     Among other things, Plaintiff alleges that putative class members are entitled to unpaid wages, statutory penalties, and attorneys' fees and costs. Complaint, Prayer for Relief.  Specifically, Plaintiff alleges that Ford "failed to keep accurate records of all hours worked," "did not require…non-exempt employees to clock in and out at the beginning and end of their shifts, and did not otherwise keep accurate records of actual hours worked." Complaint ¶ 10.  Plaintiff also alleges that Ford failed to provide non-exempt employees with all statutorily mandated meal periods and failed to

authorize and permit rest periods. *Id.* ¶¶ 11, 12.  Additionally, Plaintiff alleges that Ford "failed to reimburse Plaintiff and other employees for expenses they incurred in the course of their employment [and] caused unlawful deductions to be taken from Plaintiff's and other employees' wages" for work-related expense reimbursements. *Id.* ¶¶ 13, 14.  As a result of these allegations, Plaintiff additionally alleges that Ford failed "to pay all minimum wages [and] meal and rest premium wages […] and issued inaccurate wage statements to Plaintiff."  Plaintiff also alleges that wage statements issued are "facially deficient…in violation of Labor Code 226(a)(2)." *Id.* ¶ 17.

8.     Removal of a class action is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

9.     Ford denies any liability in this case both as to Plaintiff's individual claims and as to the claims she seeks to pursue on behalf of the putative classes.  However, for purposes of the jurisdictional requirements *for removal only*, the allegations in Plaintiff's Complaint identify a putative class of more than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million. *See id.* § 1332(d).

**A.     The Proposed Class Consists of More Than 100 Members**

10.     Based on Plaintiff's allegations, this action satisfies CAFA's requirement that the putative class contain at least 100 members. *See id.* § 1332(d)(5)(B).

11.     Plaintiff's putative classes consist of "all of [Ford's] current and former non-exempt employees who were subject to [Ford's] timekeeping practices, or any time from four years immediately prior to the filing of this action through the present." Complaint ¶ 18a.

12.     Plaintiff alleges that she was employed by Ford as a "non-exempt employee."  Complaint ¶ 3.  Plaintiff further alleges that she purports to represent other "similarly situated non-exempt employees within San Bernardino County and the State

of California." *Id.* ¶ 4.  According to Ford's records, Ford employed at least 340 full-time, non-exempt employees in California between July 20, 2019 and September 20, 2023.   Declaration of Dharinidharan Subramaniam ("Subramaniam Decl.") ¶ 4(a). Based on Plaintiff's class definition, the putative class contains at least 340 members.

13.     Accordingly, while Ford denies that class treatment is permissible or appropriate, the putative class consists of over 100 members.

**B.     Ford and Plaintiff Are Not Citizens of the Same State**

14.     Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).

15.     A person is a citizen of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A party's residence is prima facie evidence of his or her domicile.  *Ayala v. Cox Auto., Inc.*, 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)).  Plaintiff alleges that she "was, and currently is, a California resident[] [d]uring the four years immediately preceding the filing of this action[.]" Complaint ¶ 3.  Plaintiff is therefore considered a citizen of California for purposes of removal under CAFA.  *Ayala*, 2016 WL 6561284, at *4.

16.     A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1).  The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  Ford is incorporated in Delaware and its principal place of business is Dearborn, Michigan.  Subramaniam Decl. ¶ 3.  Accordingly, it is a citizen of both Delaware and Michigan.  *See* 28 U.S.C. § 1332(c)(1).

17.   The citizenship of "DOES 1 through 100," also named as Defendants in this action, should be disregarded for purposes of assessing jurisdiction.  *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").  Plaintiff has pleaded no facts as to who these individuals are, where they live, or how they are related to this case.  Complaint ¶ 5; *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (district court properly disregarded doe defendants where there was "no information as to who they are or where they live or their relationship to the action" and therefore they were not "indispensable parties and served no other purpose than protecting the plaintiff under California pleading practice").  Accordingly, Plaintiff and Ford are citizens of different states, and CAFA's minimal diversity requirement is met.  28 U.S.C. § 1332(d)(2)(A).

## C.   The Amount in Controversy Exceeds $5 Million

18.   CAFA requires that the amount in controversy in a class action exceed $5 million, exclusive of interests and costs.  *Id.* § 1332(d)(2).  In calculating the amount in controversy, a court must aggregate the claims of all individual class members.  *Id.* § 1332(d)(6).

19.   "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2015).  To satisfy this burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions."  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201–02 (9th Cir. 2015).  "An assumption may be reasonable if it is founded on the allegations of the complaint."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 959 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." (quotations and citations omitted)).  That is because "[t]he amount in controversy is simply an estimate of the

total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87.  Importantly, a plaintiff seeking to represent a putative class cannot "bind the absent class" through statements aimed to limit their recovery in an effort to "avoid removal to federal court." *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595–96 (2013).

20.   Moreover, in assessing whether the amount-in-controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'"  *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

21.   As Ford will demonstrate below, the amount in controversy exceeds the $5 million CAFA threshold.  Although Ford denies that Plaintiff's claims have any merit, Ford avers, for the purposes of meeting the jurisdictional requirements for removal *only*, that if Plaintiff were to prevail on every claim and allegation in her Complaint on behalf of the putative classes, the requested monetary recovery would exceed $5 million.  Ford reserves the right to present additional evidence establishing the amount placed in controversy by each of Plaintiff's claims should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied. *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d at 959 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings" requires the removing defendant to "support her jurisdictional

allegations with competent proof" (quotations and citations omitted)).  "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied." *Arias*, 936 F.3d at 924.

1. **Plaintiff's Claim for Alleged Violations of California Labor Code Section 226 Places More Than $788,000 in Controversy**

22.   Plaintiff's claim for inaccurate wage statements alone places more than $788,000 in controversy.  Plaintiff alleges in her Fourth Cause of Action that Ford "as a matter of policy and practice, failed to furnish Plaintiff and [putative class members] with accurate itemized wage statements that included, among other requirements, total hours worked, all hourly rates in effect during the pay period, all wages earned, as well as all mean and rest period premium wages earned, in violation of [California] Labor Code section 226(a)"  Complaint ¶ 39.  On this ground, Plaintiff seeks, among other things, "statutory penalties" pursuant to California Labor Code section 226.  *Id.*, Complaint ¶ 41, Prayer for Relief.

23.   Under Labor Code section 226(e)(1), an employee suffering injury as a result of an intentional failure to comply with section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  Cal. Lab. Code § 226(e)(1).

24.   Ford denies that any such penalties are owed to Plaintiff or putative class members.  However, for purposes of this jurisdictional analysis *only*, Ford relies on Plaintiff's allegations that the penalties are owed.  Plaintiff alleges that Ford "knowingly and intentionally" "failed to furnish Plaintiff [and putative class members] with accurate itemized wages statements [in accordance with] Labor Code section 226 [,]" which "led

to, among other things, the non-payment of all their minimum wages and meal and rest period premium wages, and deprived them of the information necessary to identify and reconcile the discrepancies in [Ford's] reported data."  Complaint ¶¶ 39–40.

25.     Based on those allegations, it is reasonable to assume for the purposes of this jurisdictional analysis *only*, that all putative class members in California who are covered by Plaintiff's wage statement claim received inaccurate wage statements each pay period.  Plaintiff alleges that Ford is liable for wage statement penalties due to providing facially inaccurate wage statements and providing wage statements that were inaccurate as a result of failure to pay other wages.  Complaint ¶ 16.  Under these circumstances, it is consistent with Plaintiff's allegations to assume for removal purposes that all putative class members received inaccurate wage statements.  *See Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) (concluding it is appropriate to use 100% violation rate for wage statement claim where the claim is derivative and where "many violations alleged"); *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *7 (C.D. Cal. Dec. 3, 2019) (similar); *Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 WL 5618872, at *3 (C.D. Cal. Sept. 24, 2015) ("Courts in this district have found the amount in controversy is satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice, or other similar language, and where the plaintiff offers no evidence rebutting this violation rate."); *Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), aff'd, 631 F.3d 1010 (9th Cir. 2011) (courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation).  Ford's practice during the one-year period prior to the filing of the Complaint[2] has been to issue paychecks to employees in California, non-exempt employees on a weekly basis (every week); as such, a pay period includes one week. Subramaniam Decl. ¶ 4(b)

---

[2]  The statute of limitations for this claim is one year.  Cal. Civ. Proc. Code § 340(a).

Gibson, Dunn & Crutcher LLP

26.     During the one-year period prior to the filing of the original Complaint, Ford employed at least 240 full-time, non-exempt employees in California. Subramaniam Decl. ¶ 4(c).  These 240 employees worked a total of at least 8,000 pay periods between July 20, 2022 and September 20, 2023.  *Id.* Based on Plaintiff's allegations, the amount in controversy with respect to Plaintiff's Fourth Cause of Action is approximately **$788,000** calculated as follows:

| | |
|---|---|
| Penalty for initial pay period for each employee (240 initial pay periods x $50): | $12,000 |
| Penalty for each subsequent pay period for each employee (7,760 (total time periods – initial time periods) x $100): | $776,000 |
| Amount in controversy for section 226 claim, based on Plaintiff's allegations: | **$788,000** |

27.     The amount in controversy alleged by Plaintiff on this claim alone thus places at least $788,000 in controversy.

**2.     Plaintiff's Claim for Waiting Time Penalties Places Another $772,800 in Controversy**

28.     Plaintiff's claim for waiting time penalties pursuant to California Labor Code section 203 puts an additional $772,800 in controversy.  Plaintiff alleges that she and other putative class members who ended their employment with Ford during the three-year period prior to filing this Complaint are entitled to recovery of "waiting time penalties" pursuant to California Labor Code section 203.[3]  Complaint ¶¶ 44–46 (alleging Ford "failed to timely pay" Plaintiff and putative class members "at their separation from employment, including (but not limited to) unpaid minimum wages and unpaid meal and rest time premium wages").

---

[3]  The statute of limitations for an action under Labor Code section 203 is three years. Cal. Civ. Proc. Code § 338(a); Cal. Lab. Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1396, 1398 (2010).

Gibson, Dunn & Crutcher LLP

29.     If an employer fails to pay all wages due to an employee at the time of termination, as required by California Labor Code section 201, or within 72 hours after resignation, as required by California Labor Code section 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days.  Cal. Lab. Code § 203.

30.     To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of 30 days, depending on the length of delay in receipt of wages.  *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days" and noting that the "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, L.L.C.*, 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015) (similar).  Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members" when estimating that amount in controversy under CAFA.  *Marentes v. Key Energy Servs. Cal., Inc.*, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where a plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "reasonable to assume waiting time penalties accrued to the thirty-day limit").

31.     Plaintiff alleges that Ford "failed to timely pay Plaintiff and all [putative class members] all final wages due to them at their separation from employment, including (but not limited to) unpaid minimum wages and unpaid meal and rest period premium wages [and] continue to fail to pay Plaintiff and [putative class members] all earned wages at the end of employment in a timely manner pursuant to the requirements of Labor Code §§201-203."  Complaint ¶¶ 44-45.  Based on these allegations, it is reasonable to assume for the purposes of this jurisdictional analysis *only*, that each putative class member is entitled to the full thirty days of waiting time penalties.  *See*

*Crummie*, 2017 WL 4544747, at *3.  Ford denies that any such penalties are owed to Plaintiff or any putative class members.  However, for purposes of this jurisdictional analysis *only*, Ford relies on Plaintiff's allegations that the penalties are owed.

32.     At least 140 non-exempt employees in California ended their employment with Ford between July 20, 2020 and September 20, 2023.  Subramaniam Decl. ¶ 4(d).  The average hourly rate of pay for those 140 employees was at least $23.00.  *Id.*

33.     If, as Plaintiff alleges, individuals who left the employment of Ford during the three years preceding the filing of the Complaint were owed wages and did not receive them, the amount in controversy with respect to the waiting time penalties claim for the non-exempt employees who worked in California and ended their employment since July 20, 2020 would be approximately **$772,800**, calculated as follows:

| | |
|---|---|
| $23.00 average hourly rate x 8 hours per day: | $184.00 daily rate |
| $184.00 x 30 days maximum penalty: | $5,520 per employee |
| Amount in controversy for waiting time penalties, based on Plaintiff's allegations ($5,520 x 140 employees): | **$772,800** |

34.     The amount in controversy alleged by Plaintiff on this claim thus places at least another $772,800 in controversy.

**3.     Plaintiff's Claim for Meal and Rest Period Violations Places Another $2,415,000 in Controversy**

35.     Plaintiff's claim for meal and rest period violations pursuant to California Labor Code section 226.7 puts an additional $2,415,000 in controversy.  Plaintiff alleges that Ford "failed to provide Plaintiff and other non-exempt employees with all statutorily mandated meal periods due to [Ford's] meal period policies/practices[,]" which "made it impracticable to take a 30-minute off-duty meal period prior to the end of the fifth hour of work."  Complaint ¶ 11.  Plaintiff additionally alleges that Ford "failed to authorize and permit rest periods to Plaintiff and other non-exempt employees" who

Gibson, Dunn &
Crutcher LLP

11

were "frequently unable to take a net 10-minute rest for each 4 hours worked or major fraction thereof…in violation of Labor Code §226.7." *Id*. ¶ 12.  Accordingly, Plaintiff alleges that she and other putative class members are owed "premium compensation for meal period violations" and entitled to "rest period premiums[.]" *Id*. ¶¶ 33, 37.

36.     Under Labor Code section 226.7, "if an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c); *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 864–65 (2021).

37.     During the four-year period prior to the filing of the action, Ford employed at least 340 full-time, non-exempt employees in California.  Subramaniam Decl.¶ 4(e). These employees worked an aggregate total of at least 35,000 pay periods from July 20, 2019 and September 20, 2023, and were paid at an average hourly rate of at least $23.00. *Id.*

38.     Plaintiff failed to specify in her Complaint how many meal periods or rest breaks she claims her and other putative class members actually missed and for which she claims they were not properly compensated.  However, Plaintiff alleges the existence of a systemic failure on the part of Ford to schedule employees in a way that would permit him and others to take their meal periods and rest breaks uninterrupted.  Based on these allegations alone, Ford assumes a conservative violation rate of just one non-compliant meal period and two non-compliant rest periods per one-week pay period, at the average hourly rate of at least $23.00.  *See, e.g., Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (finding a once-per-week violation rate reasonable where the complaint alleged that the defendant "regularly and consistently" provided non-compliant meal periods); *Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (noting that a one-day-per-week violation rate is reasonable where plaintiffs had alleged a policy or practice); *cf. Mejia*

*v. DHL Express (USA), Inc*., No. 15-CV-890, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (approving an assumed 100% violation rate where plaintiff alleged defendant maintained uniform policies and practices and procedures).

39.     Ford bases its calculation on an assumption that a combined premium of $69.00 per pay period ($23.00 for one non-compliant meal period and $46.00 for two non-compliant rest periods) would be owed for 35,000 pay periods in the alleged class period.

40.     Therefore, while denying liability altogether and for jurisdictional purposes only, Plaintiff's meal and rest period claims place at least $2,415,000 in controversy, calculated as follows:

| | |
|---|---|
| Estimate of 1 meal period and 2 rest break penalties for each employee in each pay period (3 x $23.00 average hourly rate): | $69.00 |
| Aggregate number of pay periods worked by 340 employees: | 35,000 |
| Amount in controversy for meal period and rest break claims based on number of employees ($69 x 35,000): | **$2,415,000** |

41.     These assumptions—and even higher ones—are frequently found reasonable in meal and rest break cases where plaintiffs allege "routine" or "regular" violations, like Plaintiff does here. *See Branch v. PM Realty Grp., L.P*., 647 F. App'x 743, 745–46 (9th Cir. 2016) (holding "extrapolated violation rate" of two meal period violations per week was reasonable where plaintiff stated in a declaration that he and the putative class "frequently" had breaks interrupted); *Danielsson v. Blood Ctrs. of Pac.*, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) (finding assumption of "a 20% violation rate for meal and rest breaks during the putative class period" to be "reasonable given the allegations of a 'pattern and practice' of such violations"); *Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *5 (N.D. Cal. Jan. 9, 2018) (upholding a 100% violation rate for a meal period claim where the plaintiff alleged that the defendant

"consistently" and "regularly" committed the alleged violations); *Avila v. Kiewit Corp.*, 789 F. App'x 32, 33–34 (9th Cir. 2019) (reversing remand order after finding that allegations of "frequent" and "regular" missed meal periods and rest breaks allowed the defendant to "reasonably . . . assume[] that each of the class members suffered the violations alleged"). Like in these cases, Plaintiff alleges that Ford failed to provide her and putative class members "with all statutorily mandated meal periods due to [Ford's] meal period policies/practices[,]" and she "and other non-exempt employees were frequently unable to take a net 10-minute rest period[.]" Complaint ¶¶ 11, 12.

42.    Accordingly, Plaintiff's claims for alleged meal and rest period violations place at least an additional **$2,415,000** in controversy.

### 4.    Plaintiff's Claim for Minimum Wage Violations Places Another $805,000 in Controversy

43.    Plaintiff's claim for minimum wage violations pursuant to California Labor Code sections 1194(a) and 1194.2(a) puts an additional **$805,000** in controversy. Plaintiff alleges that Ford "did not require Plaintiff and other non-exempt employees to clock in and out at the beginning and end of their shifts, and did not otherwise keep accurate records of all hours worked." Complaint ¶ 10. According, Plaintiff contends that Ford "failed to compensate Plaintiff and other non-exempt [employees] at least the minimum wage for all hours worked." *Id.*

44.    If an employer fails to pay minimum wages for all hours worked in amounts set by state law, as required by California Labor Code sections 1194(a) "any employee receiving less than the legal minimum wage … is entitled to … the unpaid balance of the full amount of this minimum wage … compensation, including interest thereon, reasonable attorney's fees, and cost of suit." Cal. Lab. Code §1194(a). Additionally, in any action to recover wages less than the minimum wage, "an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code §1194.2(a).

45.     Plaintiff seeks four years' worth of minimum wages.  During the four-year period prior to the filing of the action, Ford employed at least 340 full-time, non-exempt employees in California.   Subramaniam Decl.¶  4(e).   These employees worked an aggregate total of at least 35,000 pay periods from July 20, 2019 and September 20, 2023, and were paid at an average hourly rate of at least $23.00.  *Id.*

46.     Plaintiff alleges Ford "did not require Plaintiff and other non-exempt employees to clock in and out at the beginning and end of their shifts, and did not otherwise keep accurate records of actual hours worked….Indeed, Plaintiff often worked before her scheduled star time and/or after her scheduled end time, but [Ford] failed to compensate [her] for all of this additional time."  Complaint ¶ 10.  Plaintiff claims that, "[a]s a result of these policies/practices, [Ford] failed to keep accurate time keeping records" and accordingly failed to compensate her and putative class members for "at least the minimum wage of all hours worked." *Id*.  Based on Plaintiff's allegations alone, Ford assumes one hour of off-the-clock work per week.  *See Hull v. Mars Petcare US, Inc.*, 2018 WL 3583051, at *4 (C.D. Cal. July 25, 2018) (noting that "the Central District, as well as others, has approved a once-a-week assumption for minimum and overtime wages," and finding it "reasonable to adopt" defendants' "estimate of one hour of minimum wage per week"); *see also Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("Where, as here, a proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week.").

47.     Therefore, while denying liability altogether and for jurisdictional purposes only, Plaintiff's minimum wage claim for employees beginning on July 20, 2020 places an additional **$805,000** in controversy, calculated as follows:

| | |
|---|---|
| Aggregate number of weeks worked: | 35,000 |
| Average hourly rate: | $23.00 |
| Conservative estimate of off-the-clock time per week: | 1 hour |
| Amount in controversy for minimum wage claims ($23.00 x 1 hour x 35,000 weeks): | **$805,000** |

48.    Accordingly, Plaintiff's claims for alleged minimum wage violations place at least an additional **$805,000** in controversy.

**5.    Plaintiff's Claim for Reimbursement for Necessary Expenditures Places $140,000 in Controversy**

49.    Plaintiff's claim for reimbursement of necessary business expenditures pursuant to California Labor Code section 2802 puts an additional **$140,000** in controversy.  Plaintiff also alleges that Ford "failed to reimburse Plaintiff and other employees for expenses they incurred in the course of their employment, including expenses incurred in using personal cell phones for work purposes," specifically alleging that Ford "failed to accurately reimburse [Plaintiff and putative class members] for a portion of their monthly cell phone bill" in violation of California Labor Code Section 2802.  Complaint ¶ 13.  Accordingly, Plaintiff alleges that she and putative class members "suffered damages" and are entitled to reimbursement.  *Id.* ¶ 51.

50.    California Labor Code section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary business expenditures or losses" incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."  Cal. Lab. Code § 2802(a).  For this provision, "the term 'necessary expenditures or losses' shall include all reasonable costs, including, but not limited to attorney's fees incurred by the employee enforcing the rights granted by this section."  *Id.* § 2802(c).

51.    Plaintiff alleges that Ford "required Plaintiff and other employees for expenses they incurred in the course of their employment, including expenses incurred in using personal cell phones for work purposes."  Complaint ¶ 13.  Specifically, Plaintiff alleges that Ford required her and similarly situated employees "to use [their]

personal cell phone[s] for communications with supervisors and other work-related purposes." *Id.* at 13.

52.    Based on Plaintiff's allegations, Ford assumes that Plaintiff will contend that a monthly reimbursement in the amount of at least $20 was owed to each putative class member.

53.    First, it is reasonable to assume that Plaintiff will contend that a monthly reimbursement in the amount of at least $20 was owed.  While Ford does not agree that any monthly reimbursement was owed, district courts have routinely accepted even higher assumptions—including up to $50 per month—to be reasonable in light of similar allegations involving cell phone use.  *See, e.g., Cavada*, 2019 WL 5677846, at *7 ($20 per month was a "reasonable assumption" for purposes of CAFA's amount in controversy requirement); *Anderson v. Starbucks Corp.*, 2020 WL 7779015, at *3–4 (N.D. Cal. Dec. 31, 2020) (finding alternative assumptions of $50 per month or $32.50 per month plus the cost of a phone reasonable under CAFA); *Vallejo v. Sterigenics U.S., LLC*, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (finding assumption of $25 per month reasonable under CAFA).  *Gurzenski v. Delta Air Lines, Inc.*, 2021 WL 5299240, at *4 (C.D. Cal. Nov. 12, 2021) (finding an assumption of 50% of an assumed monthly cell phone bill of $76, i.e. $38 per month, reasonable for purposes of CAFA's amount in controversy requirement); *Vallejo v. Sterigenics U.S., LLC*, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (finding an assumption of $25 per month reasonable for purposes of CAFA's amount in controversy requirement).  Thus, although Ford contends that Plaintiff's claims lack merit, it is reasonable for Ford to assume that Plaintiff's allegations put at least $20 per month per employee in controversy.

54.    Second, it is reasonable to assume that Plaintiff will seek monthly reimbursements for each class member for each month worked.  Plaintiff alleges that Ford "required" employees "to use [their] personal cell phone[s] for communications with supervisors and other work-related purposes,"  Complaint ¶ 13.  California courts have explained that if an employee is *required* to use a personal cell phone for "work"—

as Plaintiff alleges here—an employer must "pay some reasonable percentage" of the employee's cell phone bill. *Cochran*, 228 Cal. App. 4th at 1144 (holding that "reimbursement is always required" for "mandatory use of a personal cell phone"). Thus, Plaintiff's allegation that Ford "required" employees "to use [their] personal cell phone[s] for communications with supervisors and other work-related purposes" supports an assumption Plaintiff will seek to recover a reasonable percentage of each class member's cell phone bill for each month in which each member of the putative class worked, which allegedly spans the "four years prior to the filing" of the Complaint. Complaint ¶¶ 13, 18(f).

55.     Plaintiff seeks four years' worth of unreimbursed business expenditures. During the four-year period prior to the filing of the action, employees worked an aggregate of at least 35,000 weeks. *See* Subramaniam Decl. ¶ 3(e). If the number of workweeks is divided by five—conservatively estimating five workweeks per month— there are at least 7,000 months in which employees worked during the relevant period.

56.     Therefore, while denying liability altogether and for jurisdictional purposes only, Plaintiff's minimum wage claim for employees beginning on July 20, 2019 places an additional **$140,000** in controversy, calculated as follows:

| | |
|---|---|
| Assumed monthly reimbursement rate: | $20 |
| Aggregate number of months worked by these employees: | 7,000 |
| Amount in controversy for section 2802 claim based on Plaintiff's allegations ($20 x 7,875 months worked by 340 employees): | **$140,000** |

57.     Accordingly, Plaintiff's claims for failure to reimburse necessary business expenditures place at least an additional $140,000 in controversy.

### 6.     Plaintiff's Request for Attorneys' Fees Places Another **$1,002,000 in Controversy**

58.     Plaintiff also explicitly seeks attorneys' fees should she succeed on any of the claims in this action. *See* Complaint, Prayer for Relief. Prospective attorneys' fees

are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. *See Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."). Attorneys' fees are recoverable for claims for penalties under Labor Code section 226. Cal. Lab. Code § 226(e). Under the Ninth Circuit's well-established precedent, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'" (quoting *Hopson v. Hanesbrands Inc.*, 2008 WL 3385452, at *3 (N.D. Cal. Aug. 8, 2008))); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting cases applying a 25% benchmark in CAFA wage and hour cases).

59.   Here, Ford has established that the total amount in controversy for the claims on which Plaintiff seeks to recover attorneys' fees—the meal and rest period, minimum wage, and wage statement claims—is at least $4,008,000, and Plaintiff has not indicated that she will seek less than 25% of a common fund in attorneys' fees. *See* Complaint ¶¶ 30, 41, 46, 52, 59 & Prayer for Relief (seeking attorneys' fees). Ford denies that any such attorneys' fees are owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis only, Ford relies on Plaintiff's allegations that the attorneys' fees are owed.

60.   Using a 25% benchmark figure for attorneys' fees for Plaintiff's allegations regarding alleged California Labor Code section 226 violations, unpaid overtime, and expense reimbursements results in estimated attorneys' fees of approximately **$1,002,000**, calculated as follows:

| Conservative estimate of amount in controversy from section 226 claim, meal and rest period violations, and minimum wage violations ($788,000 + $2,415,000 + $805,000): | $4,008,000 |
| --- | --- |

| Attorneys' fees benchmark: | 25% |
|---|---|
| Estimated attorneys' fees in controversy ($4,008,000 x 0.25): | **$1,002,000** |

**7.    Ford Has Satisfied Its Burden Under CAFA and No Exception Is Applicable**

61.    Plaintiff's claim for alleged inaccurate wage statements places more than $788,000 in controversy.  Plaintiff's claim for alleged waiting time penalties places another $772,800 in controversy.  Plaintiff's claims for alleged meal period and rest period violations places another $2,415,000 in controversy.  Plaintiff's claims of alleged minimum wage violations places another $805,000 in controversy.  Plaintiff's claims for alleged reimbursement of necessary business expenditures place another $140,000 in controversy.  In addition, Plaintiff's request for attorneys' fees, based on her claims for wage statement violations and waiting time penalties, places an additional $1,002,000 in controversy.  In total, by using conservative assumptions to assess only five of Plaintiff's seven causes of action, the Complaint plainly places over **$5,922,800** in controversy.

62.    The amount-in-controversy figures set forth above are underinclusive of the actual amount placed in controversy by Plaintiff's claims because they are based on conservative assumptions that are well-founded based on the allegations in the Complaint.  Plaintiff's allegations therefore place more than the requisite $5 million in controversy.  The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

63.    Because Ford has shown that federal jurisdiction has been established over this action, Plaintiff bears the burden of proof to show that an exception to CAFA removal applies and justifies remand.  *See Serrano v. 180 Connect, Inc*., 478 F.3d 1018, 1024 (9th Cir. 2007).  Plaintiff cannot meet this burden, as no exceptions apply to this action. Ford expressly reserves its right to contest and further brief the applicability of

Gibson, Dunn & Crutcher LLP

20

any exception to removal under CAFA that Plaintiff may identify in any motion for remand.

### III.   THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

64.   Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

    a)   This is a civil action which is a "class action" within the meaning of § 1332(d)(1)(B);

    b)   The action involves a putative class of at least 100 persons as required by § 1332(d)(5)(B);

    c)   The amount in controversy exceeds $5 million, exclusive of interest and costs, as required by § 1332(d)(2); and

    d)   At least one member of the putative class is a citizen of a state different from that of any defendant as required by § 1332(d)(2)(A).

Accordingly, this action is properly removable under 28 U.S.C. §§ 1441, 1446, and 1453.

65.   The United States District Court for Central District of California is the federal judicial district in which the San Bernardino County Superior Court sits.  This action was originally filed in the San Bernardino County Superior Court, rendering venue in this federal judicial district proper.  28 U.S.C. § 84(c); *see also* 28 U.S.C. § 1441(a).

66.   Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Notice of Hearing (b) Summons, (c) Class Action Complaint, (d) Certificate of Assignment, (e) Civil Case Cover Sheet, (f) Notice and Acknowledgement of Receipt and (g) Answer to Complaint are attached as Exhibits A-G to the Declaration of Katherine V.A. Smith, filed concurrently herewith.  These filings constitute the complete record of all records and proceedings in the state court available to Ford.

Gibson, Dunn &
Crutcher LLP

67. Upon filing the Notice of Removal, Ford will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the San Bernardino County Superior Court, pursuant to 28 U.S.C. § 1446(d).

Dated: September 22, 2023

GIBSON, DUNN & CRUTCHER LLP
KATHERINE V.A. SMITH
MEGAN COONEY
ANGELA REID


By: */s/ Katherine V.A. Smith*
Katherine V.A. Smith

Attorneys for Defendant
FORD MOTOR COMPANY